**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LOUIS HILL, III,

    Petitioner,

    v.                                                          Civil Action No.:  RDB-21-444

WARDEN,

    Respondent.

## MEMORANDUM OPINION

In response to the above-entitled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, Respondent asserts that the Petition should be dismissed because some of the claims raised are procedurally defaulted and all of the claims lack merit.  ECF 13.  Petitioner Louis Hill, who proceeds pro se, has filed a Reply addressing the procedural default issue.  ECF 17.  After review of the pleadings filed, this Court deems a hearing in this matter unnecessary.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)).  For the reasons that follow, the Petition shall be denied and a certificate of appealability shall not issue.

## BACKGROUND

Hill was convicted of two counts of first-degree murder, two counts of attempted murder, four counts of armed robbery, and related handgun charges by a jury in the Harford County Circuit Court in connection with an October 25, 1992 bank robbery.  ECF 13-1 at 14.[1]  A description of

---

[1]    Page cites conform to pagination assigned by this Court's electronic docketing system and may not reflect the page numbers assigned by the author of the pleading.

the offense was provided by the Court of Special Appeals in an unpublished per curiam opinion

issued on June 22, 1995 affirming Hill's conviction.  ECF 13-1 at 13-20.

> On October 25, 1992, at approximately two o'clock in the afternoon, the appellant and an accomplice, Benjamin Boisseau, perpetuated [sic] an armed robbery at a branch office of the Farmer's Bank located on Liberty Road in Randallstown.  Both robbers wore masks.  No customers were in the bank at the time of the robbery.  All four employees were ordered to lie face down on the floor in the vault.  In what amounted to an execution-style shooting, Anastasia "Stacey" George and Dorothy Langmead were shot and killed.  Cindy Thomas received a bullet in the back of her neck but, though spending two weeks in Shock Trauma, survived.  Barbara Aldrich, the office manager, was only wounded by a bullet in the arm but "played dead" until after the robbers had taken approximately $6,000 in cash and fled.

*Id*. at 14-15.  At the time of the robbery, three plain-clothes Baltimore County police officers were

investigating an unrelated crime when they heard a broadcast over the police radio that there had

been a shooting at a bank and the suspects were believed to be heading East on Liberty Road.  ECF

13-1 at 83-84.  Moments later, two of the officers saw a car matching the description of the get-

away car traveling East on Liberty Road which they observed turn into a parking lot of a nearby

business.  *Id*. at 84.  The officers then saw Boisseau exit the car from the passenger side to throw

an orange bag and a coat into a dumpster.  ECF 13-1 at 16.  Hill also got out of the car on the

driver's side and put on a suit coat that matched the pants he was wearing.  *Id*.  The two men got

back into the car and "drove a short distance farther into the parking lot toward a different

dumpster."  *Id*.  When the car stopped again, Boisseau walked to the dumpster holding a bundled-

up jacket in his arms.  *Id*.  Police then moved in and arrested both men.  *Id*.  When ordered to the

ground, Boisseau dropped the jacket he was holding, and a pair of shoes and numerous spent bullet

casings fell to the ground.  *Id*.  Following the arrest, police searched the car and the nearby

dumpsters where they recovered evidence which included a pair of tennis shoes covered in blood,

the murder weapon, and the money taken from the bank.  *Id*. at 15.

Because the State sought the death penalty in Hill's case, he was entitled to seek a change of venue under Md. Rule 4-254(b). ECF 13-1 at 88. The Baltimore County Circuit Court granted the requested venue change and transferred Hill's case to Harford County. *Id*. The defense's theory of the case at trial was that a third man was involved, and it was he who shot the victims at the bank while Hill was simply driving the car. ECF 13-1 at 93 (post-conviction opinion describing trial counsel's testimony).

During the eight-day jury trial, the State put on twenty-five witnesses. ECF 13-1 at 93. Those witnesses included people who saw two men leaving the bank as well as forensic specialists who testified about hair and fiber evidence and gunshot residue. Two witnesses, Joseph Kopera and Michael Malone, were later discredited.

Malone testified that one of the victim's hairs was found on a glove recovered from inside the car Hill and Boisseau were traveling in when they were arrested. ECF 13-1 at 26 (Motion to Reopen Post-Conviction Proceedings). Malone also testified that there was no forensic evidence linking Hill to a mask that was recovered with the other evidence. ECF 13-1 at 66. Joseph Kopera's testimony concerned the firearm that was found in the car with Hill and Boisseau. ECF 1 at 22-23.

After the jury returned its verdict and sentencing proceedings were concluded, Hill was sentenced by the trial judge to two consecutive life terms plus 80 years consecutive.[2] ECF 13-1 at 7. Hill filed an appeal with the Court of Special Appeals.

On appeal, Hill claimed that items seized from his car should have been suppressed because police did not have probable cause to search the car (ECF 13-1 at 15-17); an automatic videotape recording made by the bank of its customers was improperly admitted because no foundation was

---

[2]    Hill elected to have the trial judge determine whether the death penalty would be imposed. ECF 13-1 at 11 (docket entry).

laid for it before playing it for the jury (*id*. at 17-18); the trial court improperly excluded as hearsay a statement made by co-defendant Boisseau indicating that Hill had sold him the gun one-month before the crime (*id*. at 18-19); the trial court improperly declined to supplement the felony-murder instruction as suggested by defense counsel (*id*. at 19-20); and the trial judge erred when it failed to instruct the jury it could convict Hill of accessory after the fact as a lesser included offense (*id*. at 20).  In an unpublished opinion dated June 21, 1995, the Court of Special Appeals affirmed Hill's convictions.  *Id*. at 13-20.  Hill's petition for writ of certiorari was denied by the Maryland Court of Appeals on November 27, 1995.  *Id*. at 12 (State docket sheet).

Hill then retained private counsel, Christina Gutierrez, who filed his first post-conviction petition on April 22, 1997.  ECF 13-1 at 12.  That petition raised multiple claims of ineffective assistance of trial and appellate counsel and one claim of trial court error.  *Id*. at 60-66.  Hill claimed that trial counsel rendered ineffective assistance of counsel by failing to: (1) investigate the transfer of venue process and the jury selection process in Harford County prior to moving for a change of venue;[3] (2) request special voir dire procedures, or to conduct adequate voir dire of the jury panel;[4] (3) move in limine to exclude any in-court identification of Hill; (4) ask for individual voir dire and to ask questions about race; (5) move to suppress or exclude any in-court

---

[3]  In Hill's view, had counsel investigated the procedures and law surrounding transfer of venue it would have revealed "the paucity of African Americans in the general population of Harford County and in the jury pool of Harford County as well as the limited chance of striking the jury because of those demographic facts." ECF 13-1 at 60.

[4]  Hill alleged that the jury panel, which did not include anyone who identified as African American, was asked if Hill's race or the difference between his race and the victims' race would interfere with their ability to render a fair and impartial verdict.  They were required to identify themselves in "open court of the panel as a whole" rather than at the bench, which counsel should have requested.  ECF 13-1 at 60-61.  According to Hill, this process inhibited frank disclosures of any racial bias the potential jurors may have had.  *Id*. at 61.

identification of Hill by Patricia Runk[5] which also meant the issue could not be raised on appeal; (6) present expert testimony regarding forensic evidence;[6] (7) cross-examine the State's witness on the procedure for conducting a gunshot residue test;[7] (8) object to the court's instructions concerning the credibility of witnesses or the "witness is presumed to speak the truth" instruction; (9) challenge erroneous statements in the pre-sentence investigation report; and (10)  file a motion for modification of sentence.  ECF 13-1 at 60-65.  In addition, Hill claimed that appellate counsel rendered ineffective assistance of counsel because no issue was raised on appeal concerning the change of venue or the asserted improper jury instruction on aiding and abetting.  *Id*. at 65-66.

A hearing was held in the Circuit Court for Harford County on December 11, 2001 and the court issued its' decision on January 9, 2002.  *Id*. at 84-102.  The only claim for which post-conviction relief was granted was that trial counsel was ineffective for failing to file a motion for modification of sentence.  ECF 13-1 at 87-88.  The court granted Hill the right to file a belated motion for modification of sentence which Hill filed on January 30, 2002.  The motion for modification is still pending and remains viable because it was filed prior to a July 1, 2004 amendment to Md. Rule 4-345 imposing a five-year limitation on the court's authority to revise or

---

[5]     Patricia Runk gave police a general description of the two men she saw emerge from the bank carrying bags and who got into a small gray or silver car and drove away.  *Id*.  She identified Hill in court as one of the two men, but on cross-examination admitted she had seen footage of Hill on the television news and saw his photograph in the paper.  *Id*. 61-62.

[6]     The proffered expert testimony would have concerned the likelihood of the absence of any blood on Hill given the brutal nature of the murders and the fact that he was arrested within minutes of the offense. ECF 13-1 at 64.  The expert testimony would have also concerned the procedures for gathering, preserving, and testing evidence.  *Id*.

[7]     Timothy Ostendarp testified that Hill's fingerprint was found on the outside of one of the surgical gloves recovered and that a gunshot residue ("GSR") test couldn't be done before fingerprinting because the solution for the GSR test would remove any prints.  ECF 13-1 at 63.  According to Hill, other testing processes existed that would not have affected the fingerprint testing but counsel failed to investigate those methods and cross-examine the expert accordingly.  *Id*.

modify a sentence.  Under *Mitchell v. Green*, 922 F.3d 187 (4th Cir. 2019), Hill's petition in this Court, filed on February 9, 2021, is timely because a motion for modification of sentence pursuant to Md. Rule 4-345 tolls the one-year limitations period applicable to § 2254 petitions.

Hill filed an application for leave to appeal the denial of post-conviction relief with the Maryland Court of Special Appeals which was summarily denied.  ECF 13-1 at 5 (docket entry).

On October 2, 2018, Hill, through counsel, Booth Ripke, filed a "Motion to Re-Open Post-Conviction Proceedings or Alternatively Second Petition for Post-Conviction Relief."  ECF 13-1 at 21-25.  The motion focused on the fact that prior post-conviction counsel, Christina Gutierrez, abandoned Hill and caused the post-conviction proceedings to stall.  *Id*. at 24.  Hill alleged that he sent 19 letters to Ms. Gutierrez between 1997 and 2000 and that eight more letters were sent by his family members.  During the time Hill was attempting to communicate with Ms. Gutierrez, she never informed him that she was under investigation by the Attorney Grievance Commission or that she had never completed the work she was hired by Hill to do.  *Id*. at 25.  "Ms. Gutierrez was disbarred after a long period of medical disability dating back to at least 1999 when she represented Mr. Hill.  Her condition quickly deteriorated, and she eventually consented to disbarment in 2001." *Id*. at 21-22.  By 2001, Hill hired replacement counsel, Michael Kaminkow, for his post-conviction proceedings.  *Id*. at 80-81 (Motion to Strike Appearance).  However, because "no meaningful legal work had been completed from 1997 – 2001, new counsel was hamstrung at the 2001 post-conviction hearing, and 'submitted on the papers' as to most every claim."  *Id*. at 25.

Hill alleged that Ms. Gutierrez rendered ineffective assistance of counsel due to her failure to do the work she was paid to do and for misappropriating funds that were provided to her for the purpose of hiring an expert witness, which she never obtained.  *Id*. at 22.  For the purpose of the Motion to Reopen, counsel for Hill "consulted Jason Beckert, a research microscopist" and

provided the State court with an affidavit from Mr. Beckert.  *Id.*, *see also id.* at 30-34 (comparison

chart), 142-47 (Beckert declaration).  In Hill's view, had Gutierrez hired such an expert, "material

impeachment evidence undermining the false or perjured testimony offered by the State through

two persons who have since been discredited: Michael Malone and Joseph Kopera" would have

been exposed.  *Id.* at 22.  Hill claimed that had the original post-conviction court had the benefit

of such expert testimony he would have received a new trial.

The motion to re-open was denied.  ECF 13-1 at 164-68.  In denying the motion, the court

observed that:

> The claim regarding witness Malone is devoid of merit. As the State points out
> and as the trial record reflects, the Malone testimony at trial was as a matter of
> fact favorable to the Petitioner in that the testimony established that there was
> no forensic evidence linking the recovered mask to the Petitioner.
>
> The testimony of Mr. Kopera was used to bolster the State's case. No issue
> concerning his academic background was discovered until some fourteen years
> after the trial. The gun used was recovered from Petitioner's car almost
> immediately after the robbery. The Petitioner and his co-defendant were
> apprehended by Baltimore County police officers while fleeing the scene.  Mr.
> Kopera is now deceased. The failure of trial counsel to ask Mr. Kopera about his
> academic background is not material here - especially since nobody knew it until
> fourteen years later.  Kopera's testimony was not central to the State's case.

Mem. Op. and Order denying Motion to Reopen Post-conviction Proceedings, ECF 13-1 at 166-

67.  The court also found that Hill's complaints about Ms. Gutierrez's representation for his first

post-conviction petition were without merit as she no longer represented him at the time of the

hearing and substitute counsel was given eighteen months to prepare for the hearing, and to amend

or modify the petition.  *Id.* at 167.  Further, Hill was given the opportunity to expand the claims

raised at the post-conviction hearing during the hearing.  *Id.*

Hill filed an application for leave to appeal the denial of his Motion to Re-open which the

Court of Special Appeals denied on July 16, 2019.  ECF 13-1 at 186-87.  Relying on several alleged

errors in the Circuit Court's decision denying the motion, counsel for Hill filed a Motion for Reconsideration of the denial of his application for leave to appeal.  *Id*. at 188-93.  That motion was denied on August 16, 2019.  *Id*. at 202.

In his petition filed with this Court, Hill raises four claims of ineffective assistance of counsel.  He alleges that trial counsel was ineffective for failing to: present expert forensic testimony to dispute or undermine the testimony of Michael Malone (ECF 1 at 11-18); investigate and impeach Joseph Kopera regarding his academic record (*id*. at 22-25); object to the jury instructions that a witness is presumed to speak the truth and on reasonable doubt (*id*. at 26-32); and raise the venue and jury venire claim (*id*. at 33-36).

As noted, Respondent contends the first two of these claims, as well as the claim regarding the reasonable doubt instruction, are procedurally defaulted and that all four claims are without merit.  ECF 13.

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings."  *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005).  The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*.  "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

## I.     Procedural Default

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

As the Fourth Circuit has explained:

If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be

10

required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[8] *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id.* (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995).

## II.      Ineffective Assistance of Counsel

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient, and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional

---

[8]      Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief.  *See Murray v. Carrier*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id*.; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003).  Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence.  *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).  Hill has not raised an actual innocence claim.

errors, the result of the proceeding would have been different." *Id.* at 694.  A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*.  at 696.

As the Supreme Court held in *Strickland*, "a state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent stated by [former] 28 U.S.C. § 2254(d)[ now § 2254(e)(1)]." *Id*. at 698.  Rather, "although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254[(e)(1)], . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.*  It follows, then, that § 2254(d)(1) applies to the state court's conclusion that the petitioner's trial counsel rendered effective assistance of counsel and this Court may not grant relief on this claim as long as the state court denied the claim based on a reasonable application of the *Strickland* standard to the facts presented in the state court proceeding.

## ANALYSIS

### I.      Procedural Default

In his first claim, Hill states that trial counsel failed to investigate and hire an expert in hair fiber analysis.  He explains that at trial, the procedure for gathering, preserving, and testing hair fiber were presented by the State.  Although the post-conviction court in its opinion denying the motion to reopen stated that Michael Malone [the State's expert witness] gave testimony favorable to Petitioner, the analysis was limited to the evidence recovered from a mask recovered during Petitioner's arrest.  The "hair and fiber" evidence presented by Malone has been discredited.  ECF

1 at 11.  At trial, Malone claimed he found one of the victim's hairs on a glove located in the car that Petitioner and his co-defendant were in when they were arrested.  *Id*. at 13.

Hill seeks to excuse the procedural default of this claim based on the fact that Hill hired Gutierrez to file a post-conviction petition and she was given money to retain a forensic expert for purposes of the post-conviction hearing.  ECF 1 at 13.  Gutierrez never hired an expert and, eventually, the Client Security Trust Fund reimbursed Hill's family for the expert witness fee paid.  *Id*.  "Without any such expert support in the record, the Post-Conviction Court denied relief."  *Id*., *see also* ECF 1-6 (post-conviction mem op and order Jan. 9, 2002).

When Hill's post-conviction proceedings were open and pending, the State was told about Michael Malone's misconduct.  ECF 1 at 15.  Hill heard media reports about Malone and made a request for documents from the Department of Justice ("DOJ").  *Id*.  The documents received indicated that the DOJ had contacted the Baltimore County State's Attorney by letter dated May 9, 2000, disclosing Malone's fraudulent past, asking for transcripts of Hill's trial, and asking the Baltimore County State's Attorney to further investigate.  *Id*. at 15-16.  The DOJ let the State's Attorney decide whether to disclose this information to Hill.  *Id*. at 16.  In July of 2000, the prosecutor responded to the DOJ and said that in her view Malone's testimony was not material to Hill's conviction and it would not be disclosed.  *Id*.  When this decision was made Hill's first post-conviction case was pending and included a challenge to the "handling of Malone's forensic testimony at trial."  *Id*.  In Hill's view, the State was required to disclose this information to post-conviction counsel because of the open and pending post-conviction case concerning, in part, the validity of Malone's forensic testimony.  *Id*. at 17.  Hill believes that had the information been disclosed and his original post-conviction counsel had hired an independent expert, Malone's misconduct would have been revealed and his post-conviction claim found meritorious.  *Id*. at 16-

17.  Hill's counsel for the motion to reopen post-conviction proceedings contacted an expert witness – Jason Beckert – who made comparisons between the errors uncovered by the DOJ regarding Malone's testimony and the testimony provided in Hill's case.  ECF 1 at 17-18, *see also* ECF 13-1 at 142-47 (Declaration of Jason Beckert).

In his second claim, Hill claims ineffective assistance of trial counsel for failure to investigate Joseph Kopera.  In his view, had counsel done so, it would have been revealed that Kopera lied about his college degrees in chemical engineering from University of Maryland and engineering from Rochester Institute of Technology.  *Id*.  According to Hill, the testimony regarding the firearm that was recovered from his car was "critical to the State's case" and had Kopera's false credentials been revealed, counsel could have objected to him as an expert witness and, at a minimum, preserved the issue for appeal.  *Id*. at 23.  Hill surmises that "the jury would have learned of the State's attempt to hire witnesses who are not qualified in their respective fields to commit perjury during a death penalty trial" had Kopera's false credentials been exposed during cross-examination.  *Id*.  Hill further contends that the post-conviction court applied *Strickland* unreasonably to the facts because it gave no consideration of how much weight the State gave to Kopera's testimony when analyzing the prejudice prong.  *Id*.

Hill also assigns error to post-conviction counsel Christina Gutierrez because she did not investigate or challenge Kopera's testimony.  ECF 1 at 24-25.  Gutierrez did not do any investigation and Hill's petition was "'submitted on the papers' without any support" by Hill's new post-conviction counsel.  *Id*. at 25.  Hill asserts that had post-conviction counsel rendered constitutionally adequate representation, Kopera's false testimony would have been revealed.  *Id*. In Hill's view, Kopera's credibility was central to the State's case and if the jury had not believed his testimony there was a substantial possibility that Hill would not have been convicted.  *Id*.  He

adds, "when the trial prosecutor later informed the DOJ she would not disclose the Malone impeachment to the defense, the reason she cited was the supposed strength of Kopera's testimony. *Id.*, *see also* ECF 1-10 at 2 (July 24, 2000 letter to U.S. DOJ from S. Ann Brobst).

Respondent contends these claims are procedurally defaulted because Hill raised them for the first time in his Motion to Re-Open Post-Conviction Proceedings which was denied by the State court on the basis that it was not in the interests of justice to re-open the proceedings. Additionally, Hill was not entitled to file a second post-conviction petition.  ECF 13 at 17-22. Respondent further argues that Hill's assertion that the procedural default should be excused due to the ineffective assistance of post-conviction counsel (Gutierrez), does not constitute adequate cause for the default as there is no constitutional right to post-conviction counsel.  *See Murray v. Giarratano*, 492 U.S. 1, 7 (1989) (states not required to provide assistance of counsel to death row inmates in state post-conviction proceedings).

In his Reply, Hill adds that his motion to reopen was not denied on an independent and adequate State procedural rule because the court "exercised its discretion and issued a ruling on the merits." ECF 17 at 1.  He additionally states that the failure of trial counsel and post-conviction counsel to hire a forensic expert and to investigate the firearms expert called by the State in a death penalty case demonstrates prejudice.  *Id.*

Hill is correct that the Circuit Court addressed the merits of his claims raised in the motion to reopen post-conviction proceedings, but the court did so in the context of determining whether under Md. Code Ann., Crim. Proc. § 7-104 the interests of justice would be served by reopening post-conviction proceedings.  *See* ECF 13-1 at 165.  To the extent that the claims are not procedurally defaulted, this Court agrees that the claims lack merit and finds that the State court's denial of the motion to reopen does not constitute a basis for federal habeas relief.

In considering Hill's motion to reopen, the State court observed that much of the asserted basis for the motion was the ineffective representation provided to Hill by Ms. Gutierrez. ECF 13-1 at 165-66. However, Hill was not represented by Ms. Gutierrez at the post-conviction hearing; Michael Kaminkow was the attorney representing Hill. *Id*. at 166. The court noted that Kaminkow was an experienced attorney who was provided with ample time to amend the petition or to raise other issues. Further, the court found that the testimony by Malone did not implicate Hill inasmuch as his testimony was that Hill could not be connected to the masks used during the robbery. *Id*. To the extent that the State court did not address other testimony provided by Malone, such as a hair belonging to one of the victims found on a glove in the car Hill and Boisseau were traveling in, the defense's theory in the case was that Hill was not a primary actor in the crime but simply assisted Boisseau in fleeing the scene. *See* ECF 13-1 at 93 (summarizing defense counsel's testimony at post-conviction hearing). The State court's view of the evidence and determination of the underlying facts was not unreasonable.

With regard to Kopera's testimony, the State court observed that the fraud in relation to his educational credentials was not discovered until approximately fourteen years after the crime. ECF 13-1 at 166. Moreover, the gun used in the robbery/murders was recovered from the car Hill and Boisseau fled in after a very brief time had elapsed. Thus, Kopera's testimony was not central to the State's case. To the extent that Hill claims that the State's Attorney declined to inform him about the DOJ's discovery regarding Malone because of the strength of Kopera's testimony, that allegation is belied by the July 24, 2000 letter from the State's Attorney to the DOJ. *See* ECF 13-1 at 120 ("The issue in Hill's case concerned whether he was a principal in the first degree to the murders. The testimony of Michael Malone did not address this issue and was, therefore, not material.").

Accordingly, whether Hill's first two claims were procedurally defaulted or not, neither presents a viable claim for federal habeas relief.

## II.    Jury Instructions

Hill claims that trial counsel was ineffective when he failed to object to the following jury instruction: "[a] witness is presumed to speak the truth, but this presumption may be outweighed [by] the manner in which the witness testifies, by the character of the testimony given or by contradictory evidence." ECF 1 at 26.  He adds that Ms. Gutierrez was also ineffective for failing to argue that *Laster v. State*, 70 Md. App. 592 (1987) prohibits such an instruction.  *Id*.  According to Hill, the Court of Special Appeals held in *Laster* that there is no presumption of truthfulness for any witness and this instruction constitutes an invasion of the province of the jury.  "Post-conviction counsel raised this error but failed to adequately present the *Laster* holding to the court." ECF 1 at 27.  Hill argues that if trial counsel had objected, the instruction would have been struck or at least preserved for appellate review.  ECF 1 at 27.

The post-conviction court rejected the claim regarding the witness credibility instruction because Hill's assertion that the instruction gave the jury the impression that it was only the State's witnesses who were presumed to speak the truth is the opposite of what the instruction stated.  ECF 13-1 at 99.  The instruction stated, "A witness is presumed to speak the truth, but this presumption may be outweighed in the manner in which the witness testifies, by the character of the testimony given, or by contradictory evidence."  *Id*.  The trial judge reminded the jury that Hill was presumed innocent, and the instruction, in the post-conviction court's view, did not undermine that presumption.  *Id*.  The court observed that, "in no conceivable fashion did the instruction given suggest that only the State's witnesses were presumed to be telling the truth nor did it even remotely undermine the Defendant's presumption of innocence."  *Id*.

Hill's reliance on *Laster* in connection with the witness credibility instruction is inapposite. The Court of Special Appeals held in that case that an instruction identical to the one given in Hill's case was not plain error, but that in a case where there are no witnesses called by the defense the instruction should not be given. *Laster*, 70 Md. App. at 598-99. In Hill's case, the defense did in fact present witness testimony in its case-in-chief. *See* ECF 13-1 at 181-82 (State's Response to Motion to Reopen). Any failure by the post-conviction court to specifically mention and differentiate *Laster* from Hill's case is not a basis for finding that the post-conviction court unreasonably applied established law to the facts of the case.

Hill also claims that the reasonable doubt instruction should have been the subject of trial counsel's objection because it "(1) compared reasonable doubt to the force of a belief needed to persuade one to make an important life decision; (2) failed to qualify that explanation with the phrase 'without reservation;' (3) confused the jury by attempting to provide too many illustrations; and (4) used the unclear and outdated terms 'to a moral certainty' and 'fanciful/ whimsical' and 'capricious" doubt.' ECF 1 at 28. Hill argues that the Maryland Court of Appeals has rejected reasonable doubt instructions that describes the burden as one where a person weighs options and decides whether to act; that is more consistent with a preponderance standard. *Id.* at 31, citing *Wills v. State*, 329 Md. 370, 387 (1993).

Hill adds that in *Savoy v. State*, 420 Md. 232, 254 (2001) the Court of Appeals observed that jury instructions should be viewed "in total" and when that is done with Hill's instructions "it conveys to jurors the notion that they could convict based on a lower level of confidence than the law requires and does not constitute an adequate explanation of the reasonable doubt standard." ECF 1 at 32. Hill asserts that the opinion by the court denying the motion to reopen post-conviction

proceedings did not take the holding in *Savoy* into account and amounted to an unreasonable application of the *Strickland* standard. *Id*.

Respondent asserts that the reasonable doubt portion of Hill's claim is procedurally defaulted because it was raised for the first time in his motion to reopen post-conviction proceedings and there has been no showing that Hill could not have raised it in his first post-conviction petition. ECF 13 at 20, n.6. Hill's contention is that he could not raise the issue because Ms. Gutierrez rendered ineffective assistance of counsel in failing to raise the claim. ECF 17. As noted, Hill does not have a federal constitutional right to counsel in post-conviction proceedings. Further, as observed by the post-conviction court, Ms. Gutierrez was no longer involved in the post-conviction case when the matter came to the court for a hearing. There is no allegation that the new post-conviction counsel was somehow prevented from raising this claim. The claim is therefore procedurally defaulted and will not be addressed.

## III.    Venue and Jury Venire

As noted, venue for trial was moved from Baltimore County to Harford County and the jury venire was entirely White. ECF 1 at 33-34. Trial counsel objected to the removal to Harford County and asked that the case be moved to another county where there would be a lower likelihood of people having heard media accounts that Hill was the gunman. *Id*. at 34. Out of 80 prospective jurors, 50 said they had heard of or knew about the case. The request to move the trial to a different county was denied by the court before the jurors were questioned individually, Hill claims this is an abuse of discretion. *Id*. Argument was offered by trial counsel indicating that Harford County has a greater majority of Caucasians there than Baltimore County and that it was a denial of due process for the court to deny the motion to change venue. *Id*. at 35-36. Therefore, Hill claims appellate counsel should have raised the issue on appeal. *Id*. at 36. Further, Hill alleges

that post-conviction counsel did not raise the ineffective assistance of appellate counsel "squarely" and therefore relief was denied when there was a claim available that would have likely led to the "correct resolution of this issue." *Id*.

In rejecting this claim, the post-conviction court observed that the claim "is totally devoid of merit and borders on the patently absurd." ECF 13-1 at 89. Trial counsel did not have any control over where the trial would be transferred, and Hill had consulted with counsel and concurred in the request for transfer of venue. *Id*. After the transfer, trial counsel raised the issues of pre-trial publicity and lack of a proportionate number of African American citizens in the jury pool with the Harford County court and raised it again after the general voir dire question on the first day of trial. *Id*. at 90.

The court further found that Hill's claim that trial counsel failed to ask individual voir dire questions regarding racial bias is refuted by the transcript which established that counsel requested and did ask individual voir dire questions regarding racial prejudices. ECF 13-1 at 95-96. After the trial judge asked two general voir dire questions about race, he asked counsel if there were any objections to the voir dire questions. ECF 13-1 at 96. Mr. Morin, trial co-counsel, asked if the prospective jurors could be asked if they belonged to any racial groups, exclusive churches or clubs or whether they sent their children to a racially exclusive school. *Id*. The court declined, stating the race issue had been adequately covered. *Id*. The post-conviction court concluded that the questions asked about race "comported with then existing law" and the asserted failures did not constitute deficient performance by counsel. *Id*.

Hill fails to demonstrate that the post-conviction court's analysis is an unreasonable interpretation of well-established law, nor is there any indication that the result of Hill's trial would

have been different if counsel had raised the matters Hill requested.  *See Strickland*, 466 U.S. at 694.  Federal habeas relief is therefore unwarranted with regard to this claim.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U. S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (2017).  The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied.  *See* 28 U.S.C. § 2253(c)(2).  Hill may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.  *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate Order follows.


___12/10/2021_____                          _____/s/_____
Date                                                        RICHARD D. BENNETT
                                                              UNITED STATES DISTRICT JUDGE